1
2
3
4
5
6
7
8                **UNITED STATES DISTRICT COURT**
9               **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11   MICHAEL WESTON, individually and on behalf of members of the general public | )   Case No.: 1:13-cv-01092 - LJO - JLT |
| 12   similarly situated, | ) |
| | )   ORDER GRANTING PLAINTIFF'S MOTION TO |
| 13           Plaintiff, | )   REMAND |
| | ) |
| 14      v. | )   (Doc. 9) |
| | ) |
| 15   HELMERICH & PAYNE INTERNATIONAL | ) |
|      DRILLING CO., and DOES 1 through 100, | ) |
| 16 | ) |
|           Defendants. | ) |
| 17 | ) |

18       Plaintiff Michael Weston ("Plaintiff") seeks a remand of this action to Kern County Superior

19 Court.  (Doc. 9).  Defendant Helmerich & Payne International Drilling Co. ("Defendant") filed its

20 opposition to the motion on August 28, 2013 (Doc. 11), to which Plaintiff filed a reply on September

21 4, 2013.  (Doc. 12).  On September 11, 2013, the Court heard the oral arguments of the parties.  For

22 the following reasons, Plaintiff's motion to remand is **GRANTED**.

23 **I.      Factual and Procedural History**

24       Plaintiff initiated this action by filing a Summons and Complaint in Kern County Superior

25 Court on June 5, 2013.  (Doc. 1, Exh. 1).  Plaintiff alleges he is a former employee of Helmerich &

26 Payne International Drilling Co., and was employed by Defendant from approximately September

27 2011 to May 2012. (Doc. 1, Exh. 1 ¶ 18).  He seeks to bring the action on behalf of himself and all

28 others similarly situated pursuant to California Code of Civil Procedure section 382.  (*Id.* ¶ 12).  Thus,

Plaintiff seeks to represent a class defined as: "All current and former hourly-paid or non-exempt California-based 'rig' employees who were employed by Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (*Id.* ¶ 14).  Plaintiff contends Defendant "failed to compensate [class members] for all hours worked, missed meal periods and/or rest breaks."  (*Id.*, ¶ 19).

For the alleged wage and hour violations, Plaintiff raises six causes of action against Defendant: (1) violation of California Labor Code §§ 510 and 1190 (unpaid overtime), (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums), (3) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages), (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid), and (6) violation of California Business & Professions Code §§17200, *et seq* (unfair competition/unfair business practices).  (Doc. 1, Exh. 1).

On July 15, 2013, Defendant filed a Notice of Removal asserting the Court has jurisdiction pursuant to the Class Action Fairness Act, thereby initiating the action in this Court.  (Doc. 1).  Plaintiff filed the motion to remand now pending before the Court on August 14, 2013.  (Doc. 9).

## II.      Removal Jurisdiction

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction.  *Caterpillar, Inc. v. Williams*, 482 U.S. 286, 392 (1987).  Specifically,

> Except otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  *Id.* at § 1331.

A party seeking removal must file a notice of removal of a civil action within thirty days of receipt of a copy of the initial pleading.  *Id.* at § 1446(b).  Removal statutes are to be strictly construed, *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety.  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683-85 (9th Cir. 2006); *see also Calif. ex. rel. Lockyer v. Dynegy, Inc.*, 375

F.3d 831, 838 ("the burden of establishing federal jurisdiction falls to the party invoking the statute"). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

### III.     Class Action Fairness Act

The Class Action Fairness Act of 2005 ("CAFA") gives the District Courts original jurisdiction in any civil action where: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action is pled as a class action involving more than 100 putative class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d).  Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).  Here, Plaintiff does not dispute the number of putative class members exceeds the jurisdictional requirement, or that the diversity requirement is met.  Rather, Plaintiff contends Defendant failed to satisfy the burden of demonstrating the amount in controversy exceeds $5,000,000. (Doc. 20).

### IV.     Burden upon Defendants

The Ninth Circuit determined "that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego*, 443 F.3d at 685.  However, the parties dispute what burden is placed upon Defendant in this action.

Plaintiff contends Defendant has the burden to establish with "legal certainty" that the CAFA's jurisdictional amount is satisfied because Plaintiff affirmatively plead that the amount of damages in controversy was less than the $5,000,000 threshold.  (Doc. 9 at 9) (citing *Loudermilk v. United States Bank Nat'l Assoc.*, 506 F.3d 994, 997 (9th Cir. 2007).  In *Loudermilk*, the Court held that when the plaintiff alleged "in good faith" an amount in controversy less than $5,000,000, "the party seeking removal must prove with legal certainty that CAFA's jurisdiction amount is met." *Loudermilk*, 506 F.3d at 1000.

Defendant counters that the legal certainty test is inapplicable, and rather the burden is to establish the damages exceed the threshold by a preponderance of the evidence.  (Doc. 11 at 6) (citing *Rodriguez v. AT&T Mobility Services, LLC*, — F.3d —, 2013 WL 4516757 (9th Cir. Aug. 27, 2013).

As Defendant argues, shortly after Plaintiff filed his motion to remand, the Ninth Circuit found the Supreme Court overruled *Loudermilk* in *Standard Fire Insurance Company v. Knowles*, — U.S. —, 133 S.Ct. 1345 (2013). The Ninth Circuit explained:

> *Lowdermilk* held that district courts "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met" so long as a plaintiff avers damages below $5 million. *Id*. at 998. Under *Standard Fire*, the district court's inquiry is not so narrow. *Standard Fire* instructed district courts to look to the potential claims of the absent class members, rather than plaintiff's complaint, holding that section 1332(d) so requires: "[t]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class." 133 S.Ct. at 1348.

*Rodriguez*, 2013 WL 4516757 at *2, *6. The Ninth Circuit observed: "*Lowdermilk* reasoned that the initial jurisdictional determination derives from the complaint, while *Standard Fire* mandates that courts determine their jurisdiction by aggregating all potential class members' individual claims." *Id.* at *6 (citing *Standard Fire*, 133 S.Ct at 1350).

Because the legal certainty standard was "a consequence of a plaintiff's ability to plead to avoid federal jurisdiction," the reasoning behind *Lowdermilk* was "clearly irreconcilable with *Standard Fire*." *Id.* Thus, the Ninth Circuit found "the proper burden of proof imposed upon a defendant to establish the amount in controversy requirement is the preponderance of the evidence standard." *Rodriguez*, 2013 WL 4516757 at *1. This standard requires a defendant to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204 (E.D. Cal. 2008) (quoting *Sanchez v. Mon. Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (emphasis omitted). Thus, Defendant has the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000.

## V.      Discussion and Analysis

Defendant contends the damages in issue "greatly exceed" $5,000,000 CAFA threshold. (Doc. 1 at 8). To calculate the amount of damages in issue at the time of removal, Defendant relied upon information provided by Tina York, the current Manager of Employment for Helmerich & Payne International Drilling Co. Ms. York compiled data that shows Defendant "employed 749 non-exempt and hourly California-based rig employees . . . from June 5, 2009 to the present." (Doc. 3 at 2, York

1   Decl. ¶ 5).  In addition, Ms. York reports "there are approximately 475 non-exempt and hourly

2   California-based rig employees who ended their employment with [Defendant], either voluntarily or

3   involuntarily."  (*Id.*, ¶ 6).[1]  According to Defendant, the claims of these putative class members results

4   in damages that "are potentially worth a minimum of $77,833,780.00."  (Doc. 1 at 12).

5        To arrive at this number, Defendant assumed each putative class worker "worked a standard 5

6   days per week [and] worked two (2) hours of overtime per day."  (Doc. 1 at 9-10).  Also, Defendant

7   assumed the putative class members each missed one meal and one rest period per workday for the

8   entire class period.  (*Id.* at 10).  Calculating the penalty for failure to timely pay wages, Defendant

9   noted "there are 107 pay periods in the class period," and assumed each putative class member had

10  one violation per pay period.  (*Id.* at 11).  Further, Defendant calculated the maximum thirty-day

11  penalty for each of the 475 putative class members who left their employment during the class period.

12  (*Id.*).  Although Defendant did not calculate any amount of damages for Plaintiff's fifth or sixth causes

13  of action, Defendant asserts the damages for Plaintiff's Labor Code causes of action "each reach th[e]

14  threshold *alone*, without considering the remaining causes of action, or Plaintiff's requested attorneys'

15  fees."  (Doc. 1 at 13) (emphasis omitted).

16       Defendant contends the company is "not required to quantify the number of employees who

17  experienced a wage and hour violation during the class period, the type of violation each person

18  experienced, or each employee's specific wage rate."  (Doc. 11 at 11) (citing *Bryant v. Service*

19  *Corporation, Int'l*, 2008 U.S. Dist. LEXIS 120174 at *19 (N.D. Cal. May 7, 2008).  Defendant asserts

20  it was "permitted to make reasonable assumptions to calculate the amount-in-controversy, including a

21  100% violation rate."  (*Id.* at 12) (emphasis omitted).  As an example, Defendant cites this Court's

22  opinion in *Thomas v. Aetna Health of California, Inc.*, where the plaintiff alleged the defendant had

23  unlawful practices, and the Court found it was "reasonable to presume that Defendants' policies with

24  regard to wages and hours of its employees was uniform and thus any violation is likely to apply to the

25  entire group of employees.  *Id.*, 2011 U.S. Dist. LEXIS 59377 at *64 (E.D. Cal. June 2, 2011).

26

27  _____

28  [1]  Opposing Plaintiff's motion to remand, Defendant filed an amended declaration from Ms. York, in which she corrects the number of putative class members from 749 to 732, and the number of workers who left their employment to 473.  (Doc. 11-2 at 2-3, ¶¶ 5, 7).

1    Similarly, Defendant notes that the Central District found the defendant "could properly calculate the

2    amount-in-controversy based on a 100% violation rate" when the plaintiff did not include a "limitation

3    on the number of violations."  (Doc. 11 at 13) (citing *Coleman v. Estes Express Lines*, 730 F. Supp. 2d

4    1141, 1150 (C.D. Cal. 2010)).  Because "Plaintiff was extremely vague in drafting his Complaint and

5    did not provide any specifics," and because he alleged Defendant had "a corporate policy and practice

6    of failing to pay their hourly-paid or non-exempt California employees for all hours worked, missed

7    meal periods and rest breaks," Defendant contends it was proper to use 100% violation rates when

8    calculating the damages. (Doc. 11 at 14).

9        Nevertheless, in the opposition to the motion to remand, Defendant recalculated the damage

10   figures more conservatively.  For example, as to the overtime claims, Defendant calculated that each

11   of the putative class members were deprived of overtime pay four hours per week.  As to the meal and

12   rest break violations, Defendant bases the calculation on the assumption each class member suffered

13   one meal and one rest break violation per week per employee. As to the minimum wage violation

14   claim, Defendant's recalculation is based upon five violations per employee.  As to waiting time

15   penalties, Defendant assumed 10 days of penalties per employee.  Therefore, Defendant's revised

16   damages figures are as follows:

|                  | 100% Violation Rate | Revised Rate      | Amount in Controversy |
| ---------------- | ------------------- | ----------------- | --------------------- |
| Overtime pay     | $13,034,636.16      | 4 hrs/wk/employee | $1,862,090.88         |
| Meal/rest break  | $13,029,307.20      | 1x/wk/employee    | $1,861,329.60         |
| Minimum wage     | $18,812,400         | 5/employee        | $805,200              |
| Waiting Time     | $4,163,463          | 10 days           | $1,387,782            |
| Total            | $49,039,806.36      |                   | $5,916,402.48         |

23   In reply, Plaintiff contends that the use of a 100% violation rate is not proper and argues the

24   figures "are still based on improper speculation and conjecture."  (Doc. 12 at 6) (emphasis omitted).

25   Plaintiff notes that "the same day *Rodriguez* was released, the Ninth Circuit also released *Garibay v.*

26   *Archstone Communities LLC*, — F.3d —, 2013 WL 4517934 (9th Cir. Aug. 27, 2013), which reiterated

27   'the general proposition that federal courts may not base their jurisdiction on mere speculation.'" (*Id.*)

28   According to Plaintiff, Defendant should have waited to conduct more discovery to understand what is

in controversy and calculate the amount of damages.  (*Id.*) (citing, e.g., *Zackaria v. Wal-Mart Stores, Inc.*, 2011 WL 6065169 at *3 (C.D. Cal. Dec. 5, 2011); *Roth v. Comercia Bank*, 799 F. Supp. 2d 1107, 1118-31 (C.D. Cal. 2010).

Importantly, in *Garibay* the Ninth Circuit appears to have disavowed the use of a 100% violation rate, such as permitted in *Thomas* and *Coleman*.  The Court observed the only support for the defendants' calculation of the amount in controversy was "a declaration by their supervisor of payroll, which set[] forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages."  *Garibay*, 2013 WL 4517934 at *1.  The Court explained that beyond the information in the declaration, "the defendants rely on speculative and self-serving assumptions about key unknown variables."

Nevertheless, Defendant argues *Garibay* does not apply because it is factually distinct[2] and because it fails to address the content of the plaintiff's pleading, unlike the situation here where the complaint which entitles Defendant to use the 100% violation rate.  However, this position is not accurate.  *Graibay* specifically noted the content of the plaintiff's pleading as the basis for the defendant's calculations but found this insufficient.

> For example, Garibay alleged violations of Cal. Labor Code § 226, which provides that employers who fail to provide employees with "an accurate itemized [wage] statement" are subject to fines. Archstone's calculations assume that every single member of the class would be entitled to recover penalties for every single pay period. Garibay also alleges violations of Cal. Labor Code § 203, which provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days. Archstone assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion. Along the same lines, Garibay alleged violations of Cal. Labor Code § 226.7, which provides that employers who fail to provide adequate meal or rest breaks must compensate the employee for an additional hour of pay. Archstone assumes that each class member was wrongly denied a break twice each week. As the district court correctly explained, Archstone failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than "one missed rest period per paycheck or one missed rest period per month."

---

[2] The factual difference seems limited to the fact that here Defendant excluded the non-terminated employees from the calculation under Labor Code § 203 though they claim the defendant in *Garibay* calculated a damage amount even for those employees who were not terminated during the class period.  Though the Court appreciates how the holding of the Court of Appeals could be so interpreted, this interpretation makes little sense.  Instead, the logical interpretation of *Garibay* is that each "terminated" employee was calculated to receive the full 30-day penalty; any other interpretation, surely, would have engendered scorn by the Court of Appeals.

7

1   *Garibay*, 2013 WL 4517934 at *1, emphasis added.  Though the Court did not use the magic language

2   "100% violation rate," the decision makes clear that a removing defendant *must* have evidence to

3   support the assumptions made.  This is consistent with the Court's ruling in *Gaus*, 980 F.2d at 567 (A

4   removing defendant must set forth the underlying facts supporting its claim that the amount in

5   controversy exceeds the statutory minimum.).

6        Similar to *Garibay*, here, Defendants provided the declarations of Ms. York, in which she set

7   forth the number of putative class members, the average number of work weeks during the class

8   period, and the average hourly wage of the employees.  (Doc. 3 at 3; Doc. 11-2 at 2-3).  Ms. York does

9   not explain or discuss her methodology including why she chose to use the average of these figures.

10  However, there is no demonstration that using averages makes sense in this case.  For example, there

11  is no showing that there is a normal distribution as to each data point.  Thus, the Court must conclude

12  that using an average merely ensures that the calculations are inaccurate for virtually every employee.

13  It is unclear why the actual figures could not have been used and damage estimates still achieved

14  expeditiously given the employee's unique information—such as the specific hire and termination

15  dates—*was* used by Ms. York.

16       In any event, here Defendant's initial calculations used most of the same unsupported

17  assumptions as in *Garibay,* which the Ninth Circuit has determined is error.  (Doc. 1 at 10, ¶¶32-33).

18  Defendant fails to provide any facts supporting the calculations, which forces the Court to find

19  Defendant appears to "rely on speculative and self-serving assumptions about key unknown

20  variables." *See Garibay*, 2013 WL 4517934 at *1.  Moreover, just as the *factual* justification was

21  lacking for the use of the 100% violation rate, the evidence supporting the justification for using the

22  revised rates likewise is missing. For example, Defendant provides no factual underpinning for the

23  assumption that a meal and rest break violation occurred one time per week or why an overtime

24  violation should be presumed to occur for four hours every week.  The fact that Defendant's revised

25  figures are smaller than the original numbers does not lessen the burden of providing *evidence, rather*

26  *than assumptions*. Failing to do so does not constitute the summary judgment-type evidence

27  contemplated to evaluate removal jurisdiction. *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th

28  Cir.2004).

Though the Court agrees Defendant is not obligated to prove Plaintiff's case at this stage—or at any stage—there are methods of determining a reasoned basis for the calculations such as random sampling and, as noted above, using actual numbers, rather than averages to determine the amount put in controversy by the complaint (*Roth v. Comerica Bank*, 799 F.Supp.2d at 1130) or, at a minimum, explaining why Defendant's methodology and assumptions make sense.

## VI.      Conclusion and Order

Because Defendant fails to provide any facts supporting the calculations based upon 100% violations, Defendant has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000.  Consequently, the Court cannot find it has jurisdiction pursuant to CAFA.  However, as the Ninth Circuit explained in *Garibay*, if Defendant "later discovers evidence that the jurisdictional bar is met, it may once again attempt to remove this case to federal court."  *Garibay*, 2013 WL 4517934 at *2 (citing *Roth v. CHA Hollywood Med. Ctr.*, 720 F.3d 1121 (9th Cir. 2013)).

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiff's motion to remand is **GRANTED**;

2.      This matter is **REMANDED** to Kern County Superior Court; and

3.      The Clerk of Court is **DIRECTED** to close this matter.

IT IS SO ORDERED.

Dated:   **September 16, 2013**              **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE

9